# EXHIBIT 2

Prospectus Supplement dated November 15, 2006 (to Prospectus dated November 3, 2006)

**$1,388,801,000**




**Impac Funding Corporation**
Master Servicer and Sponsor

**Impac Secured Assets Corp.**
Depositor

# Mortgage Pass-Through Certificates, Series 2006-4

**You should consider carefully the risk factors beginning on page S-9 in this prospectus supplement.**

**The Issuing Entity**

The issuing entity will be a trust consisting of a pool of adjustable-rate and fixed-rate, first and second lien, one- to four- family residential mortgage loans.

The issuing entity will be represented by seventeen classes of certificates, fourteen of which are offered under this prospectus supplement.

**Credit Enhancement**

The offered certificates will have credit enhancement in the form of excess interest and overcollateralization and subordination of other classes of certificates.

In addition, an interest rate swap agreement and two cap contracts will be available to cover certain interest shortfalls, net WAC shortfall amounts, realized losses and amounts necessary to maintain or restore the required level of overcollateralization.

The price to investors will vary from time to time and will be determined at the time of sale. The proceeds to the depositor from the offering of the underwritten certificates will be approximately 99.75% of the aggregate certificate principal balance of the offered certificates, less expenses estimated to be approximately $900,000. There is no underwriting arrangement for the Class B Certificates.

**Neither the Securities and Exchange Commission nor any state securities commission has approved or disapproved of these securities or passed upon the adequacy of this prospectus. Any representation to the contrary is a criminal offense.**

**The Attorney General of the State of New York has not passed on or endorsed the merits of this offering. Any representation to the contrary is unlawful.**

**Bear, Stearns & Co. Inc.**

**Countrywide Securities Corporation**

Underwriters

**The Issuing Entity**

The certificates will be issued by Impac Secured Assets Trust 2006-4, a New York common law trust pursuant to a pooling and servicing agreement dated as of November 1, 2006 among the depositor, the master servicer and the trustee. On the closing date, the depositor will deposit into the trust the mortgage loans. Impac Secured Assets Trust 2006-4 will issue seventeen classes of certificates representing the trust, fourteen of which are offered by this prospectus supplement.

The certificates represent in the aggregate the entire beneficial ownership interest in the Issuing Entity. Distributions of interest and/or principal on the offered certificates will be made only from payments received from the Issuing Entity as described below.

The Class C, Class P and Class R Certificates are the classes of certificates that are not offered by this prospectus supplement.

In addition, the trustee will establish a supplemental interest trust that will hold an interest rate swap agreement and two cap contracts for the benefit of the certificateholders.

*See "Description of the Certificates" in this prospectus supplement.*

**The Mortgage Loans**

The trust will include all one- to four-family, adjustable-rate and fixed-rate residential mortgage loans secured by first and second liens on the related mortgaged property. The mortgage loans will include fully amortizing, interest-only and balloon mortgage loans. All collateral numbers in this prospectus supplement are subject to a 5% variance.

The information included in this prospectus supplement with respect to the mortgage loans is based on a pool of mortgage loans as of the cut-off date. The characteristics of the final pool will not materially differ from the information provided with respect to the mortgage loans. Unless otherwise specified, all percentages described with respect to the mortgage loans are calculated based on the aggregate principal balance of the mortgage loans as of the cut-off date.

Approximately 64.04% of the mortgage loans have adjustable rates and are secured by first liens on the related mortgaged property. Approximately 32.97% of the mortgage loans have fixed rates and are secured by first liens on the related mortgaged property. Approximately 2.99% of the mortgage loans have fixed rates and are secured by second liens on the related mortgaged property.

The mortgage loans have an aggregate principal balance of approximately $1,400,001,237 as of November 1, 2006. The mortgage loans have original terms to maturity of not greater than 30 years and the following additional characteristics as of November 1, 2006:

| | |
|---|---|
| Range of mortgage rates (approximate): | 3.990% to 14.875% |
| Weighted average mortgage rate (approximate): | 7.327% |
| Weighted average remaining term to stated maturity (approximate): | 350 months |
| Range of principal balances (approximate): | $19,296.87 to $1,781,099.53 |
| Average principal balance: | $265,503.74 |
| Range of loan-to-value ratios and combined loan-to-value ratios (approximate): | 8.71% to 100.00% |
| Weighted average original loan-to-value ratios[(1)] and combined loan-to-value ratios (approximate): | 75.53% and 86.67%, respectively |

(1) Combined loan-to-value ratios with respect to the mortgage loans secured by second liens.

Approximately 17.44%, 0.49% and 58.29% of the mortgage loans, by aggregate outstanding principal balance as of the cut-off date, are interest only for the first five years, seven years and ten years, respectively, after origination. As a result, no principal payments will be received with respect to these mortgage loans during this period except in the case of a prepayment.

• the Fair Credit Reporting Act, which regulates the use and reporting of information related to the borrower's credit experience.

Depending on the provisions of the applicable law and the specific facts and circumstances involved, violations of these federal or state laws, policies and principles may limit the ability of the Issuing Entity to collect all or part of the principal of or interest on the mortgage loans, may entitle the borrower to a refund of amounts previously paid and, in addition, could subject the Issuing Entity to damages and administrative enforcement. *See "Legal Aspects of Mortgage Loans —Consumer Protection Laws with Respect to Contracts" in the prospectus.*

The sponsor will represent that as of the closing date, to the best of sponsor's knowledge, each mortgage loan at the time it was originated complied in all material respects with applicable local, state and federal laws, including, without limitation, usury, equal credit opportunity, truth-in-lending and disclosure laws. The sponsor will also represent that each mortgage loan is being serviced in all material respects in accordance with applicable local, state and federal laws, including, without limitation, usury, equal credit opportunity and disclosure laws. In the event of a breach of this representation, it will be obligated to cure the breach or repurchase or replace the affected mortgage loan in the manner described in the prospectus.

**There May Be Variations in the Mortgage Loans from the Mortgage Loans**

The mortgage loans include mortgage loans whose characteristics may vary from the specific characteristics reflected in the final pool of mortgage loans, although the extent of such variance is not expected to be material.

**The Ratings on the Offered Certificates Are Not a Recommendation to Buy, Sell or Hold the Offered Certificates and Are Subject to Withdrawal at Any Time, Which May Result in Losses on the Offered Certificates**

It is a condition to the issuance of the offered certificates that each class of offered certificates be rated no lower than the ratings described on page 5 of this prospectus supplement. A security rating is not a recommendation to buy, sell or hold securities and may be subject to revision or withdrawal at any time. No person is obligated to maintain the rating on any offered certificate, and, accordingly, there can be no assurance that the ratings assigned to any offered certificate on the date on which the offered certificates are initially issued will not be lowered or withdrawn by a rating agency at any time thereafter. In the event any rating is revised or withdrawn, the liquidity or the market value of the offered certificates may be adversely affected. *See "Ratings" in this prospectus supplement and in the prospectus.*

**The Recording of Mortgages in the Name of MERS May Affect the Yield on the Certificates.**

The mortgages or assignments of mortgage for some of the mortgage loans have been or may be recorded in the name of Mortgage Electronic Registration Systems, Inc., or MERS, solely as nominee for the sponsor and its successors and assigns. Subsequent assignments of those mortgages are registered electronically through the MERS® System. However, if MERS discontinues the MERS® System and it becomes necessary to record an assignment of the mortgage to the trustee, then any related expenses shall be paid by the Issuing Entity and will reduce the amount available to pay principal of and interest on the subordinate certificates.

The recording of mortgages in the name of MERS is a new practice in the mortgage lending industry. Public recording officers and others may have limited, if any, experience with lenders seeking to foreclose mortgages, assignments of which are registered with MERS. Accordingly, delays and additional

Mortgage, LLC. None of the third-party originators, other than American Home and GMAC, contributed more than 10% of the mortgage loans.

**Details of Specific Programs**

The following provisions apply to all of the mortgage loans originated under Impac Funding's Progressive Series Program and Progressive Express™ Program.

*Eligibility.* Impac Funding generally performs a pre funding audit on each mortgage loan. This audit includes a review for compliance with the related program parameters and accuracy of the legal documents.

*Variations.* Impac Funding uses the following parameters as guidelines only. On a case by case basis, Impac Funding may determine that the prospective mortgagor warrants an exception outside the standard program guidelines. An exception may be allowed if the loan application reflects certain compensating factors, including instances where the prospective mortgagor:

- has demonstrated an ability to save and devote a greater portion of income to basic housing needs;
- may have a potential for increased earnings and advancement because of education or special job training, even if the prospective mortgagor has just entered the job market;
- has demonstrated an ability to maintain a debt free position;
- may have short term income that is verifiable but could not be counted as stable income because it does not meet the remaining term requirements; and
- has net worth substantial enough to suggest that repayment of the loan is within the prospective mortgagor's ability.

*Appraisals.* Impac Funding does not publish an approved appraiser list for the conduit seller. Each conduit seller maintains its own list of appraisers, provided that each appraiser must:

- be a state licensed or certified appraiser;
- meet the independent appraiser requirements for staff appraisers, or, if appropriate, be on a list of appraisers specified by the Office of the Comptroller of the Currency, the Board of Governors of the Federal Reserve System, the FDIC and the Office of Thrift Supervision under their respective real estate appraisal regulations adopted in accordance with Title XI of the Financial Institutions Reform Recovery and Enforcement Act of 1989, regardless of whether the seller is subject to those regulations;
- be experienced in the appraisal of properties similar to the type being appraised;
- be actively engaged in appraisal work; and
- subscribe to a code of ethics that is at least as strict as the code of the American Institute of Real Estate Appraisers or the Society of Real Estate Appraisers.

With respect to Impac Funding's Progressive Series Program or Progressive Express™ Program in general one full appraisal is required on each loan. In addition, an automated valuation model, or

AVM, or a quantitative appraisal report (Fannie Mae Form 2055), or a Hansen Pro, or enhanced desk review is obtained either (a) when the loan to value ratio is 90.01% to 95% or (b) when the property has multiple units and the loan to value ratio is greater than 80%, or (c) the loan is a Progressive Express™ No Doc Program and the loan to value ratio is 80.01% to 90%. In addition, a quantitative appraisal report (Fannie Mae Form 2055), or a Hansen Pro, or enhanced desk review is obtained when the loan is a Progressive Express™ No Doc Program and the loan to value ratio is equal to or greater than 90.01%. A field review is also required when the loan to value ratio is equal to or greater than 95.01% or the property is located in Georgia and the loan to value ratio is 70.01% and above. Generally, when the loan amount is greater than $750,000 but less than $1,500,000, a full appraisal with interior photos plus a Fannie Mae Form 2055 are required or when the loan amount is greater than $1,500,000, two full appraisals with interior photos are required. At the underwriter's discretion, any one of the above appraisal reviews may be required when program parameters do not require an appraisal review. Impac Funding has developed expanded underwriting guidelines for appraisal requirements on the Progressive Series Program to include, when the loan amount is $1,000,000 or less, one full appraisal and when the loan amount is greater than $1,000,000, one full appraisal plus a field review with interior photos is required.

**The Progressive Series Program**

*General.* The underwriting guidelines utilized in the Progressive Series Program, as developed by Impac Funding, are intended to assess the borrower's ability and willingness to repay the mortgage loan obligation and to assess the adequacy of the mortgaged property as collateral for the mortgage loan. The Progressive Series Program is designed to meet the needs of borrowers with excellent credit, as well as those whose credit has been adversely affected. The Progressive Series Program consists of seven mortgage loan programs. Each program has different credit criteria, reserve requirements, qualifying ratios and loan to value ratio restrictions. Series I is designed for credit history and income requirements typical of "A" credit borrowers. In the event a borrower does not fit the Series I criteria, the borrower's mortgage loan is placed into either Series II, III, III+, IV, V or VI, depending on which series' mortgage loan parameters meets the borrower's unique credit profile. Series II, III, III+, IV, V or VI allow for less restrictive standards because of certain compensating or offsetting factors such as a lower loan to value ratio, verified liquid assets, job stability, pride of ownership and, in the case of refinanced mortgage loans, length of time owning the mortgaged property. The philosophy of the Progressive Series Program is that no single borrower characteristic should automatically determine whether an application for a mortgage loan should be approved or disapproved. Lending decisions are based on a risk analysis assessment after the review of the entire mortgage loan file. Each mortgage loan is individually underwritten with emphasis placed on the overall quality of the mortgage loan. The Progressive Series I, II, III, III+, IV, V and VI Program borrowers are required to have debt service to income ratios within the range of 45% to 60% calculated on the basis of monthly income and depending on the loan to value ratio of the mortgage loan.

Under the Progressive Series Program, Impac Funding underwrites one to four family mortgage loans with loan to value ratios at origination of up to 100%, depending on, among other things, a borrower's credit history, repayment ability and debt service to income ratio, as well as the type and use of the mortgaged property. Second lien financing of the mortgaged properties may be provided by lenders other than Impac Funding at origination; however, the combined loan to value ratio ("CLTV") generally may not exceed 100%. Generally, when the loan to value ratio is 97.00% to 100.00%, second liens are ineligible. Mortgage loans with a loan to value ratio of up to 95.00% on owner occupied mortgage properties are allowed a CLTV of up to 100%. Generally, second home owner occupied and non owner occupied mortgage properties are allowed a maximum CLTV of up to 95%. Under Impac Funding's 80/20 program, which is available to Progressive Series I and II borrowers only, Impac Funding may allow second lien financing at the same time as the origination of the first lien with CLTVs of up to 100%.

company that is approved by Fannie Mae and Freddie Mac. Loans with higher loan-to-value ratios require higher coverage levels. For example, non-conforming loans with loan-to-value ratios of 85%, 90% and 95% require mortgage insurance coverage of 12%, 25% and 30%, respectively. Alt-A loans with full or alternative documentation and loan-to-value ratios of 85%, 90%, 95% and 97% require mortgage insurance coverage of 12-20%, 25%, 30% and 35%, respectively. Alt-A loans with loan-to-value ratios up to 100% require 35% coverage.

American Home realizes that there may be some acceptable quality loans that fall outside published guidelines and encourages "common sense" underwriting. Because a multitude of factors are involved in a loan transaction, no set of guidelines can contemplate every potential situation. Therefore, each case is weighed individually on its own merits and exceptions to American Home's underwriting guidelines are allowed if sufficient compensating factors exist to offset any additional risk due to the exception.

*Additional Information*

The description in this prospectus supplement of the mortgage loans and the mortgaged properties is based upon the mortgage pool as of the Cut-off Date, as adjusted for the scheduled principal payments due on or before this date. However, many of the mortgage loans may not be included in the trust as a result of incomplete documentation or otherwise if the Depositor deems this removal necessary or desirable, and may be prepaid at any time. The characteristics of the final mortgage pool will not materially differ from the information provided with respect to the mortgage loans.

## STATIC POOL INFORMATION

The Depositor will provide static pool information, material to this offering, with respect to the experience of Impac Funding and American Home in securitizing asset pools of the same type at http://regabimpacisac.com.

Information provided through the Internet address above will not be deemed to be a part of this prospectus or the registration statement for the securities offered hereby if it relates to any prior securities pool or vintage formed before January 1, 2006, or with respect to the mortgage pool (if applicable) any period before January 1, 2006.

The static pool information provided with respect to American Home contains vintage information with respect to its fixed rate and long reset ARM loan originations (long reset ARMs are mortgage loans with an initial fixed rate period of five years or more). Approximately 20% and 10% of the mortgage loans in the trust were originated by American Home and are fixed rate loans and long term hybrid ARMs, respectively.

## THE ISSUING ENTITY

Impac Secured Assets Trust 2006-4 is a common law trust formed under the laws of the State of New York pursuant to the pooling and servicing agreement among the Depositor, the Master Servicer and the Trustee, dated as of November 1, 2006. The Agreement constitutes the "governing instrument" under the laws of the State of New York. After its formation, the Impac Secured Assets Trust 2006-4 will not engage in any activity other than (i) acquiring and holding the mortgage loans and the other assets of the Trust and proceeds therefrom, (ii) issuing the Certificates, (iii) making payments on the Certificates and (iv) engaging in other activities that are necessary, suitable or convenient to accomplish the foregoing or are incidental thereto or connected therewith. The foregoing restrictions are contained in the Agreement.

For a description of other provisions relating to amending the Agreement, please see "The Agreements—Amendment" in the base prospectus.

The assets of the Impac Secured Assets Trust 2006-4 will consist of the mortgage loans and certain related assets. Impac Secured Assets Trust 2006-4's fiscal year end is December 31.

## THE DEPOSITOR

The Depositor, Impac Secured Assets Corp., was incorporated in the state of Delaware in 1996 as ICIFC Secured Assets Corp., and is a wholly-owned subsidiary of Impac Funding Corporation. The Depositor changed its name to Impac Secured Assets Corp. in 1998 and was reincorporated in the State of California. The Depositor was organized for the sole purpose of serving as a private secondary mortgage market conduit. The Depositor does not have, nor is it expected in the future to have, any significant assets. See "The Sponsor" below for information regarding the size, composition and growth of the total portfolio of assets for which Impac Secured Assets Corp. has served as Depositor.

The Depositor has been serving as a private secondary mortgage market conduit for residential mortgage loans since 1998. Since that time it has been involved in the issuance of securities backed by residential mortgage loans in excess of $14 billion. In conjunction with the Sponsor's acquisition of mortgage loans, the Depositor will execute a mortgage loan purchase agreement through which the loans will be transferred to itself. These loans are subsequently deposited in a common law or statutory trust, described in this prospectus supplement, which will then issue the certificates.

After issuance and registration of the securities contemplated in this prospectus supplement and any supplement hereto, the Depositor will have no duties or responsibilities with respect to the pool assets or the securities.

The Depositor's principal executive offices are located at 19500 Jamboree Road, Irvine, California 92612. Its telephone number is (949) 475-3600.

## THE SPONSOR

The Sponsor, Impac Funding Corporation, in its capacity as mortgage loan seller, will sell the mortgage loans to the Depositor pursuant to a Mortgage Loan Purchase Agreement, dated as of November 16, 2006, among the Sponsor, the Depositor and Impac Mortgage Holdings, Inc.

The Sponsor was incorporated in the State of California in August 1995 and is an affiliate of the Depositor. The Sponsor commenced operation in California in 1995.

The Sponsor maintains its principal office at 19500 Jamboree Road, Irvine, California 92612. Its telephone number is (949) 475-3600.

The Sponsor is a mortgage company that acquires, purchases and sells primarily first-lien non-conforming Alt-A mortgage loans from a network of third party correspondents, mortgage bankers, and brokers.

The Sponsor has been securitizing residential mortgage loans since 1995. The Sponsor securitized residential mortgage loans in two transactions with an aggregate principal balance of $883,975,000 during the year ending December 31, 2003. The Sponsor securitized residential mortgage loans in four transactions with an aggregate principal balance of $3,724,226,000 during the year ending December 31, 2004. The Sponsor securitized residential mortgage loans in two transactions with an aggregate principal

# IMPAC SECURED ASSETS CORP.
## DEPOSITOR

*MORTGAGE PASS-THROUGH CERTIFICATES*
*MORTGAGE-BACKED NOTES*

You should consider carefully the risk factors in the prospectus supplement.

**The Offered Securities**
The depositor proposes to establish one or more trusts to issue and sell from time to time one or more classes of offered securities, which shall be mortgage pass-through certificates or mortgage-backed notes.

**The Issuing Entity**
Each series of securities will be secured by a trust fund consisting primarily of a segregated pool of mortgage loans, including:

- mortgage loans secured by first and junior liens on the related mortgage property;
- home equity revolving lines of credit;
- mortgage loans where the borrower has little or no equity in the related mortgaged property;
- mortgage loans secured by one- to four-family residential properties;
- mortgage loans secured by multifamily properties;
- mortgage loans secured by commercial properties and mixed residential and commercial properties, provided that the concentration of these properties is less than 10% of the pool;
- manufactured housing conditional sales contracts and installment loan agreements or interests therein; and
- mortgage securities

in each case acquired by the depositor from one or more affiliated or unaffiliated institutions.

**Credit Enhancement**
If so specified in the related prospectus supplement, the issuing entity for a series of securities may include any one or any combination of a financial guaranty insurance policy, mortgage pool insurance policy, letter of credit, special hazard insurance policy or reserve fund, and currency or interest rate exchange agreements. In addition to or in lieu of the foregoing, credit enhancement may be provided by means of subordination of one or more classes of securities, by cross-support or by overcollateralization.

The securities of each series will represent interests or obligations of the issuing entity, and will not represent interests in or obligations of the sponsor, depositor, or any of their affiliates.

The offered securities may be offered to the public through different methods as described in "Methods of Distribution" in this prospectus.

**Neither the Securities and Exchange Commission nor any state securities commission has approved or disapproved of the securities offered hereby or determined that this prospectus or the prospectus supplement is truthful or complete. Any representation to the contrary is a criminal offense.**

The date of this prospectus is November 3, 2006.

# TABLE OF CONTENTS


| Caption | Page |
|---|---|
| INTRODUCTION | 3 |
| General | 3 |
| THE MORTGAGE POOLS | 4 |
| General | 4 |
| The Mortgage Loans | 6 |
| Underwriting Standards | 11 |
| FICO Scores | 14 |
| Qualifications of Originators and Sellers | 15 |
| Representations by Sellers | 15 |
| STATIC POOL INFORMATION | 19 |
| SERVICING OF MORTGAGE LOANS | 19 |
| General | 19 |
| The Master Servicer | 19 |
| Collection and Other Servicing Procedures; Mortgage Loan Modifications | 20 |
| Subservicers | 23 |
| Special Servicers | 23 |
| Realization Upon or Sale of Defaulted Mortgage Loans | 23 |
| Servicing and Other Compensation and Payment of Expenses; Retained Interest | 26 |
| Evidence as to Compliance | 27 |
| DESCRIPTION OF THE SECURITIES | 28 |
| General | 28 |
| Form of Securities | 32 |
| Global Securities | 33 |
| Assignment of Trust Fund Assets | 37 |
| Certificate Account | 40 |
| Distributions | 45 |
| Distributions of Interest and Principal on the Securities | 45 |
| Pre-Funding Account | 47 |
| Distributions on the Securities in Respect of Prepayment Premiums | 47 |
| Allocation of Losses and Shortfalls | 48 |
| Advances | 48 |
| Modifications | 49 |
| Reports to Securityholders | 49 |
| DESCRIPTION OF CREDIT ENHANCEMENT | 52 |
| General | 52 |
| Subordinate Securities | 52 |
| Cross-Support | 53 |
| Overcollateralization | 53 |
| Financial Guaranty Insurance Policy | 53 |
| Mortgage Pool Insurance Policies | 54 |
| Letter of Credit | 56 |
| Special Hazard Insurance Policies | 56 |
| Reserve Funds | 57 |
| Cash Flow Agreements | 58 |
| Maintenance of Credit Enhancement | 58 |

| Caption | Page |
|---|---|
| Reduction or Substitution of Credit Enhancement | 61 |
| OTHER FINANCIAL OBLIGATIONS RELATED TO THE SECURITIES | 61 |
| Derivatives | 61 |
| Purchase Obligations | 63 |
| PRIMARY MORTGAGE INSURANCE, HAZARD INSURANCE; CLAIMS THEREUNDER | 64 |
| General | 64 |
| Primary Mortgage Insurance Policies | 64 |
| Hazard Insurance Policies | 65 |
| FHA Insurance | 67 |
| VA Mortgage Guaranty | 68 |
| THE DEPOSITOR | 68 |
| THE SPONSOR | 69 |
| IMPAC FUNDING CORPORATION | 69 |
| IMPAC MORTGAGE HOLDINGS, INC. | 70 |
| THE AGREEMENTS | 70 |
| General | 70 |
| Certain Matters Regarding the Master Servicer and the Depositor | 71 |
| Events of Default and Rights Upon Event of Default | 72 |
| Amendment | 76 |
| Termination; Retirement of Securities | 78 |
| The Trustee | 79 |
| Duties of the Trustee | 79 |
| Some Matters Regarding the Trustee | 81 |
| Resignation and Removal of the Trustee | 81 |
| YIELD CONSIDERATIONS | 82 |
| MATURITY AND PREPAYMENT CONSIDERATIONS | 85 |
| LEGAL ASPECTS OF MORTGAGE LOANS | 86 |
| Mortgages | 87 |
| Cooperative Mortgage Loans | 87 |
| Tax Aspects of Cooperative Ownership | 89 |
| Leases and Rents | 89 |
| Contracts | 90 |
| Foreclosure on Mortgages and Some Contracts | 92 |
| Foreclosure on Shares of Cooperatives | 93 |
| Repossession with respect to Contracts | 95 |
| Rights of Redemption | 97 |
| Anti-Deficiency Legislation and Other Limitations on Lenders | 97 |
| Environmental Legislation | 99 |
| Consumer Protection Laws with Respect to Contracts | 101 |
| Enforceability of Some Provisions | 102 |
| Subordinate Financing | 104 |
| Installment Contracts | 104 |