# EXHIBIT 3

To commence the statutory time
period of appeals as of right
(CPLR 5513[a]), you are advised
to serve a copy of this order
with notice of entry, upon all
parties.

FILED
AND ENTERED
ON  5/26  2011
WESTCHESTER
COUNTY CLERK

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
----------------------------------------------------------------X
MBIA INSURANCE CORPORATION,

                              Plaintiffs,

                                                              **DECISION AND ORDER**
                                                               Index No.: 29951-10

                         -against-

MORGAN STANLEY, MORGAN STANLEY MORTGAGE
CAPITAL HOLDINGS, LLC AND SAXON MORTGAGE
SERVICES, INC.

                              Defendants.
----------------------------------------------------------------X
LOEHR, J.

      The following papers numbered 1 to 6 were read on Defendants' motion for an order dismissing the Complaint pursuant to CPLR 3211(a)(1) and CPLR 3211(a)(7).

|  | Papers Numbered |
|---|---|
| Notice of Motion | 1 |
| Affirmation in Support with Exhibits 1 - 5 | 2 |
| Memorandum of Law in Support | 3 |
| Memorandum of Law in Opposition | 4 |
| Affirmation in Opposition with Exhibits A - J | 5 |
| Reply Memorandum of Law in Support | 6 |

      Upon the foregoing papers and oral argument on April 21, 2011, the Court rules as follows:

## Background

This action involves mortgage-backed securities. In a mortgage securitization, mortgage loans are acquired, pooled together, and then sold to a common law trust which in turn issues certificates to purchasers who are the beneficiaries of the trust and who receive distributions from the trustee according to the cash flow generated by the pool of mortgages and the rights of the respective classes of certificate holders. MBIA is a highly sophisticated and experienced insurer and Morgan Stanley and its affiliate Defendants stand as one of the major financial institutions in America. It is now well known that during the 1990's and continuing well into the first decade of the 21st century, banks, insurance companies and rating agencies operated in an atmosphere of irrational exuberance. Premised on the belief that housing prices will always go up and motivated by greed, a vast number of mortgage loans were made to borrowers who could not be reasonably expected to be able to repay their mortgage debt. In a process known as "securitization," these mortgage loans were then used as security for other instruments or "derivative securities," also known as residential mortgage backed securities ("RMBS") or mortgage pass-through certificates that were sold to investors. In that context, questionable assets, backing new forms of derivative securities, were marketed and, in many instances the marketing was assisted by the availability of insurance to mitigate the substantial risks involved in those transactions. Thereafter, the real estate market collapsed, leading to the collapse of venerable financial institutions and economic dislocation that has had a catastrophic impact on millions of individuals and on both the national and world economies (*see MBIA Ins. Corp. v Royal Bank of Canada,* 2010 WL 3294302 [Sup. Ct., West. Co., Scheinkman, J., Aug. 19, 2010]). This action, like others brought by MBIA, presents claims that MBIA, as a result of fraud on the part of Morgan Stanley and its affiliates was caused to misunderstand and underestimate the substantial risks it was insuring, which risks have come home to roost. Morgan Stanley and its affiliates respond that this action is simply an effort by MBIA to avoid the very risks that it had been paid large fees to undertake and that the substantial financial obligations now due under the contract terms were precipitated by the economic down turn. The gravamen of MBIA's Complaint is that the amount of risk assumed, and the premium charged, is dependant upon the quality of the collateral and the protections built into the structure of the deal.

MBIA charges that Morgan Stanley provided low grade collateral, misrepresented the individual and pooled mortgage loans characteristics and procured inflated credit ratings.

## The Transaction

In this action, Plaintiff claims fraudulent conduct and breaches of contract by the Defendants with respect to a securitization transaction, MSM 2007-9SL, involving a pool of approximately 5,000 subordinate-lien residential mortgages, purchased and then subsequently structured and sold as mortgage-backed securities by the Defendants and entities affiliated with the Defendants. Morgan Stanley represented to MBIA that the mortgage loans were not sub-prime loans but were alternate documentation loans (Alt-A loans) which are loans to credit worthy borrowers extended under reduced or non-traditional documentation standards. "[T]he borrowers provide alternate forms of documentation and in some instances no documentation to verify borrower attributes such as employment, income and assets." (Complaint at ¶ 26).

Morgan Stanley Mortgage Capital Holdings, LLC ("MSMCH") acquired the mortgage loans, pooled them and transferred them to Morgan Stanley Capital, Inc. ("MSCI") who then transferred them to a Trust with LaSalle Bank National Association ("LaSalle"), as Trustee. The Trust issued certificates secured by groups of those mortgages (tranches). They were sold and paid a yield to certificate holders linked to the cash flow from the loans (Complaint at ¶ 2). MBIA entered into an Insuring Agreement with the Trust agreeing to pay the Trust for short falls in the guaranteed payments that were ultimately due to the certificate holders of the Residential Mortgage Backed-Securities ("RMBS"). This guarantee of repayment of principal and interest for the RMBS notes increased their marketability (*id.* at ¶¶ 17, 20).

To induce MBIA to guarantee the securitization, Morgan Stanley made representations and warranties to MBIA concerning the origination and quality of the mortgage loans and Morgan Stanley made available to MBIA a summary of its general underwriting procedures and guidelines for each mortgage and represented that its underwriting of the mortgage loans conformed to its stated underwriting procedures (*id.* at ¶¶ 21, 22, 42, 45). It also provided "loan tapes" which contained specific data points for each loan including borrower's income, property

3

value, FICO scores, debt to income ratios and cumulative loan to value ratios. Morgan Stanley also provided loan schedules setting forth statistics about the loan pool as a whole including weighted average FICO scores, debt to income ratios and cumulative loan to value ratios together with shadow credit ratings [1] (*id.* at ¶¶ 28-35).

Additionally, it is alleged that Morgan Stanley submitted a prospectus filed with the Securities and Exchange Commission (*id.* at ¶ 40) and made formal representations concerning the expertise and capabilities in loan management and servicing to be done by its subsidiary, Saxon Mortgage Services, Inc. ("Saxon") (*id.* at ¶ 37). MSMCH further agreed that in the event of a breach of any representations or warranties related to the quality of the mortgage loans, it would either cure the breach, repurchase the mortgage loan or replace loans not meeting the representations (*id.* at ¶ 81).

## The Transaction Documents

The securitization process was accomplished through a series of agreements. A Mortgage Loan Purchase Agreement to effectuate the sale of the mortgage loans to be securitized; [2] a Trust Agreement with MSCI as Depositor of the mortgage loans and LaSalle Bank, as Trustee which established the rights of the holders of the mortgage-backed securities and the obligation of the Trustees; [3] the Servicing Agreement between MSMCH, as Owner and Saxon to service the mortgage loans; [4] an Insurance Agreement with MBIA, as Insurer, Saxon, as Servicer, Morgan Stanley, as Depositor and LaSalle Bank, as Trustee which provided the terms for the issuance of the MBIA financial guarantee policy that would be issued to the trust; [5] a Prospectus filed by the Trust which Morgan Stanley used to sell the mortgage-backed securities. Morgan Stanley furnished its 2007 "Sellers Guide" containing its underwriting process, representations and

---

[1] Shadow credit ratings are informal credit ratings obtained from established credit rating agencies based on the loan schedules.

[2] Exhibit 1 to the Affidavit of JP Rouhandeh in Support of Motion to Dismiss.

[3] Exhibit 4 to the Affidavit of JP Rouhandeh in Support of Motion to Dismiss.

[4] Exhibit 5 to the Affidavit of JP Rouhandeh in Support of Motion to Dismiss.

[5] Exhibit 2 to the Affidavit of JP Rouhandeh in Support of Motion to Dismiss.

4

warranties.[6] The Insurance Agreement incorporated the representations and warranties and the obligations of the parties in the transaction documents and gave MBIA the right to rely on the representations and warranties and to enforce their terms, and also to exercise remedies for any breach (*id.* at ¶ 48 et seq.).

Under the structure of the transaction, the Defendants assumed the risk that the securitized loans conformed to their representations and warranties about the loan attributes. Plaintiffs, as Insurer, assumed the risk if mortgage loans possessing the represented attributes failed to perform (*id.* at ¶24).

## The Action Commenced

Plaintiff contends that based upon demonstrably false written representations during the pre-deal negotiations, Morgan Stanley fraudulently induced MBIA to issue insurance on $223,194,000 worth of RMBS purchased by investors in the transaction. Plaintiff further contends that MSMCH subsequently breached its contract with MBIA including its express contractual obligations to cure or repurchase the defective mortgage loans that were improperly included in the transaction.

Delinquencies, defaults and subsequent charge offs of the mortgage loans have been substantial, diminishing cash flow to the Trust, precipitating claims by the Trustee against MBIA on the insurance policy (*id.* at ¶ 69). In December, 2010, MBIA commenced this action asserting causes of action for fraud against Morgan Stanley; for breach of the Mortgage Loan Purchase Agreement and the Trust Agreement against MSMCH; for breach of the Servicing Agreement against Saxon and for unjust enrichment against Saxon.

### 1. Fraudulent inducement

MBIA's fraud claim is based on allegations that Morgan Stanley made misrepresentations as to the quality of the underlying mortgage loans by having false or incomplete information in the loan tapes and loan schedules, by misrepresenting the due diligence performed on the loans included in the pool, and by misrepresenting the percentage of conformance with Morgan Stanley

---

[6] Exhibit 3 to the Affidavit of JP Rouhandeh in Support of Motion to Dismiss.

underwriting standards as contained in the Seller's Guide, and by misrepresenting the experience and capabilities of its subsidiary, Saxon, to service the mortgage loans. MBIA contends that these misrepresentations and failures "fundamentally distorted the risk profile represented to MBIA and raised the likelihood of losses . . ." Had MBIA known the truth it would not have issued the certificate insurance policy (*id.* at ¶ 78).

Morgan Stanley argues in essence that MBIA's fraud claim must be dismissed because it is duplicative of the breach of contract claim. It is not. A fraudulent inducement claim may be sustained when it is alleged that misrepresentations contained in documents collateral to the contract were made to induce the Plaintiff to enter into the contract in the first place (*see WIT Holding Corp. v Klein,* 282 AD2d 527, 528-29 [2d Dept 2001] [fraud claim was sustained upon Plaintiff's allegation that during discussions about an agreement to purchase an interest in a company, Defendant made representations of fact to induce Plaintiff to enter into the agreement]). MBIA claims that Morgan Stanley misrepresented, among other things, the origination and quality of the mortgage loans, the underwriting procedures and due diligence performed and the capabilities of the servicing agent to induce it to enter the Insurance Agreement. MBIA's claim relates to representations in connection with entering into the Insurance Agreement, not simply to a breach of its terms, therefore the fraud claim is not duplicative. That is so even when the alleged misrepresentations are also contained in the agreement and a fraudulent inducement claim will be permitted to proceed along with a breach of contract claim (*see JoAnn Homes at Belmor, Inc. v Dworetz,* 25 NY2d 112, 118-19 [1969]).

Morgan Stanley, relying on *Urstadt Biddle Props., Inc. v Excelsior Realty Corp.* (65AD3d 1135, 1136-7 [2d Dept 2009]), also seeks dismissal of the fraud claim for failure to allege facts as to actionable misstatements and proximate cause necessary for a fraudulent inducement claim with the detail and specificity required by CPLR 3016 (b). *Urstadt,* however, is clearly distinguishable: holding that allegations by a guarantor of a real estate lease that he was fraudulently induced to enter into the guarantee by the leasor's misrepresentations regarding the real estate taxes and zoning were insufficient to establish justifiable reliance on the misrepresentations because in the exercise of ordinary intelligence the information concerned were matters of public record. In this case, the misrepresentations that MBIA alleges are specific

6

statements and representations of fact, false when made and reasonably relied on. Such factual allegations are actionable in a fraud claim (*see Channel Master Corp. v Aluminum Limited Sales, Inc.*, 4 NY2d 403, 408 [1958]).

Thus, the complaint more than adequately identifies Morgan Stanley's misrepresentations (Complaint ¶¶ 3-5, 69-79) and further provides the identity of both the corporate entity (Morgan Stanley) and the Morgan Stanley agent (Chappell) who made the representations as well as the specific times on which many of them were made (Complaint ¶¶ 27-47).

The transaction involved a pool of 4,979 conventional, second-lien, fixed rate residential mortgage loans and the RMBS had a face value of $269,086,000 (*id.* at ¶ 25). The Complaint details the results of MBIA's forensic review which found a level of material discrepancies from the requirements of the Seller's Guide so significant that one can infer Morgan Stanley's pre-contractual representations to have been false (*id.* at ¶¶ 72-79). Plaintiff is not limited, as Defendant argues, to a loan by loan remedy as provided in the contract, but rather can seek a pool wide remedy based on its sampling and extrapolation (*cf Syncora Guarantee, Inc. v. EMC Mortgage Corp.*, No. 09 CIV. 3106 (Pac), 2011 U.S. Dist. LEXIS 31305 (S.D.N.Y., March 25, 2011] [granting partial summary judgment to the Plaintiff, insurer of a securitization transaction and allowing Plaintiff to seek a pool wide remedy based on sampling and extrapolation, separate from the contractual loan by loan remedy]). So too, the allegations of the mortgage loans material and pervasive non-compliance with the Seller's underwriting Guide and the mortgage loan representations are sufficient non-compliance from which Defendant's scienter can be inferred. Defendants argue that the losses incurred by MBIA's payments under the insuring contract could be the result of the down turn in the real estate market causing loan delinquencies. Morgan Stanley fails to establish as a matter of law that MBIA can not establish the causation that it alleges. Judgment as a matter of law "should be granted only if there is no rational basis by which the jury could find for Plaintiff as against the movant Defendant" (*see Campbell v Rogers & Wells*, 218 AD2d 576, 580 [1st Dept. 1995]). As was well stated by Justice Bransten of the New York County Commercial Division in *MBIA v Countrywide* (Index 602825/08) denying a motion to dismiss in a similar case, by decision filed July 13, 2009: "On a motion addressed to the pleadings in this highly complex action, it would be premature to make a determination as to

whether an economic down turn constituted an intervening cause in the link between Countrywide's alleged conduct and MBIA's alleged injury." Thus, whether MBIA's losses were caused by Morgan Stanley's representations or the economic down is a question of fact for trial *(See Emergent Capital Inv. Mgmt., LLC v Stonepath Group, Inc.* 343 F.3d 189, 197 [2d Cir. 2003]).

The representations were contained in the loan tapes, loan schedules, due diligence, compliance with underwriting standards and Saxon's proposed servicing. In the event of a breach, under the Loan Breach Remedy Agreement, MSMCH had to cure, repurchase or replace a loan not meeting the representations. Morgan Stanley contends that is the only remedy available to MBIA.

The loan breach remedy procedure in the MLPA has no preclusive effect on MBIA's fraud claim against Morgan Stanley because Morgan Stanley is neither a party to nor (unlike MBIA) an express third party beneficiary of the MLPA[7] (*see Wittenberg v Robinov,* 9 NY2d 261, 264 [1961] [non-party not entitled to enforce contract disclaimer]; *MBIA Ins. Corp. v Royal Bank of Canada,* 2010 WL 3294302 [Sup. Ct., West. Co., Aug. 19, 2010]). Moreover, the loan breach remedy procedures can not apply to breaches of pre-contractual representations by Morgan Stanley and their employee, Chappell. Defendant contends that the merger clause in the Insurance Agreement shields Morgan Stanley from liability for its alleged fraudulent misrepresentations. It is of note that Morgan Stanley is a non-party to that agreement.[8] MBIA's fraud claim is barred, they argue, because the merger clause included in the contract between sophisticated parties precludes an action for fraud under New York Law where the fraud claim is "inconsistent with other recitals in the contract." (Defendants' Memorandum, at 11). Under New York Law, a general merger clause does not typically bar a fraud claim (*see Dannan Realty Corp. v Harris,* 5 NY 2d 317 [1959]). Neither is MBIA's fraud claim inconsistent with the loan breach remedy procedure adopted by MBIA and MSMCH in the MLPA. And it can not be said

---

[7] The parties to the MLPA are MSCI, as Purchaser, and MSMCH, as Seller.

[8] The parties to the Insurance Agreement are MBIA, as Insurer, MSMCH, as Seller, Saxon, as Servicer, MSCI, as Depositor, and La Salle Bank, as Trustee.

8

that MBIA's reliance on the Defendant's representations was unreasonable as a matter of law (*see Century Pac., Inc. v Fulton Hotels, Corp*, 528 F. Supp. 2d 206, 229 [S.D.N.Y. 2007]). Morgan Stanley originated or acquired the mortgage loans to be included in the mortgage pool and so had unique and special knowledge regarding the mortgage loans, particularly the quality of the underwriting of the loans. MBIA as the financial guarantee insurer was several steps removed from the process of vetting the mortgage borrowers and so had to rely on the accuracy of the information received from Morgan Stanley (Complaint at ¶ 23). Morgan Stanley allegedly made pre-contractual representations on multiple occasions about the quality of its underwriting, the individual and collective attributes of the loans and the compliance of the loans with its Seller's Guide underwriting principles with full knowledge that MBIA would rely on these representations (*id.* at ¶ 22). As MBIA did not have access to the individual loan files, they had no means to independently verify Morgan Stanley's representation upon which MBIA based its assessment of the risks and the pricing for the transaction (*id.* at ¶ 22-24). None of the transaction documents disclaim MBIA's reliance on Morgan Stanley's pre-contractual representations. Morgan Stanley's motion to dismiss the first cause of action is therefore denied.

### 2. The Second Cause of Action for Breach of Contract

In determining whether a complaint is sufficient to overcome a motion to dismiss pursuant to CPLR 3211 (a) (7), the sole test is whether the pleading states a cause of action (*see Cooper v 620 Prop. Assoc.*, 242 AD 2d 359 [2d Dept. 1997]). If the factual allegations within the four corners of the complaint manifest any cause of action cognizable at law, the motion to dismiss will fail (*511 West 232nd Owners Corp. v Jennifer Realty Co.* 98 NY 2d 144, 152 [2002]). The pleading is to be liberally construed and the pleader afforded the benefit of every possible favorable inference and the court need not reach an opinion as to Plaintiff's ability ultimately to establish the truth of the allegations at trial (*see 219 Broadway Corp. v Alexanders, Inc.* 46 NY 2d 506, 509 [1979]). The Plaintiff may rely on the pleading alone and need not make an evidentiary showing in support of the complaint if the allegations are sufficient to state the necessary elements of a cognizable cause of action (*see Kempf v. Magida* 37 AD 3d 763 [2d Dept 2007]; *see also Rovello v Arofino Realty Co.* 40 NY 2d 633 [1976]). It is clear that the Court must accept as true the allegations of the complaint whether the Plaintiff can ultimately establish

same at trial (*Etzion v. Etzion*, 62 AD3d 646, 649 [2d Dept 2009]; *Pacific Carlton Dev. Corp. v 752 Pacific, LLC*, 62 AD3d 677, 679 [2d Dept 2009]; *Klepetco v Reisman*, 41 AD3d 551 [2d Dept 2007]; cf *Dinerman v Jewish Bd. of Family & Children's Services, Inc.*, 55 AD3d 530, 531 [2d Dept 2008]).

To prevail on a motion to dismiss pursuant to CPLR 3211 (a) (1) alleging a defense founded on documentary evidence, the documentary evidence relied upon must resolve all factual issues as a matter of law and conclusively dispose of the Plaintiff's claim (*see AG Cap. Funding Partners, LP v State Street Bank and Trust Co.* 5 NY 3d 582, 590 [2005]; *511 West 232 Owners Corp. v Jennifer Realty Co.* 98 NY 2d 144, 152 [2002]). Here, the Defendants have submitted a copy of the Mortgage Loan Purchase Agreement between MSCI and MSMCH dated June 1, 2007, a copy of the Insurance Agreement among MBIA and MSMCH, Saxon, MSCI and LaSalle Bank National Association dated June 28, 2007, a copy of the Morgan Stanley Seller's Guide dated March, 2007 and a copy of the Trust Agreement between MSCI and LaSalle Bank dated June 1, 2007, all of which are referred to in Plaintiff's Complaint. These submissions, of course, qualify as documentary evidence and if they disprove an essential allegation of the Complaint, dismissal will be warranted even if the allegations of the Complaint standing alone could withstand a motion to dismiss for failure to state cause of action (*see Snyder v Voris, Martini & Moore, LLC*, 52 AD3d 811 [2d Dept. 2008]; *Peter F. Gaito Architecture, LLC v Simone Dev. Corp.*, 46 AD 3d 530 [2d Dept. 2007]. "[W]here a written agreement . . . unambiguously contradicts the allegations supporting a litigant's cause of action for breach of contract, the contract itself constitutes the documentary evidence warranting the dismissal of the complaint under CPLR 3211 (a) (1)" (*see 150 Broadway N.Y. Associates, LP v Bodner*, 14 AD3d 1, 4 [1st Dept 2004]). If the contract terms are unambiguous, the interpretation is a question of law for the court and the provisions of a contract addressing the rights of the parties will prevail over the allegations in the complaint (*see Taussig v Clipper Group, L.P.*, 13 AD3d 166, 167 [1st Dept. 2004], *lv denied* 4 NY 3d 707 [2005]). The documentary evidence that forms the basis of the defense must be such that it resolves all factual issues as a matter of law and conclusively disposes of the Plaintiff's claims (*see AG Cap. Funding Partners, L.P. v State Street Bank and Trust Co.*, 5 NY 3d 582, 590 -591 [2005]). MBIA's cause of action for breach of contract against MSMCH meets the standards prescribed by CPLR 3013. Plaintiff alleges: 1) there was a

10

valid agreement (the Insurance Agreement); 2) that Defendants breached the mortgage loan representations incorporated by reference into the Insurance Agreement; 3) that MBIA has conducted a review that has revealed breaches in 96.6% of the loans reviewed; 4) that harm to MBIA includes more than $70 million in claim payments; and 5) that MSMCH has breached the loan breach remedy procedure by refusing to repurchase defective mortgage loans. As of October, 2010, MBIA had reviewed 2,957 loan files and found that 2,857, or 96.6%, contained one or more breaches of the mortgage loan representation. The loans reviewed include 1,051 loans selected at random from the securitized pool as well as 1,906 loans that were in default. Of the randomly selected loans, 982, or 93.4%, contained one or more breaches of the mortgage loan representations. Of the defaulted loans, 1,875, or 98.4%, contained one or more breaches of the mortgage loan representations (Complaint at ¶ 72). The types of breaches found were set forth in the Complaint (*id.* at ¶ 73). Clearly, the documentary evidence cannot resolve all factual issues as a mater of law. The motion to dismiss the second cause of action is therefore denied.

### 3. The Third Cause of Action

Plaintiff's third cause of action alleging breach of contract by Saxon for failure to meet the requirements of Section 3.01 and 3.02 of the Servicing Agreement are sufficiently detailed within the requirements of CPLR 3013. Plaintiff specifically identified numerous acts and omissions upon which their claim is based including Saxon's failure to maintain appropriate borrower contact as prescribed by accepted servicing practices, to adjust its collection efforts based on knowledge of the borrower's credit history, employment situation, individual circumstances, the extent and cause for delinquencies, and the failure to continue contact efforts with delinquent borrowers and to take other loss mitigation action necessary to resolve delinquencies, and its failure to monitor and record the status of the senior first mortgage note to ensure that the note was not delinquent and that tax and insurance payments were current (*id.* at ¶ 87; see also, *East Hampton Union Free Sch. Dist. v Sand Pebble Builders, Inc.*, 66 AD3d 122, 125 [2d Dept. 2009]). Accordingly, Defendant's motion to dismiss the third cause of action for breach of contract against Saxon is denied.

### 4. The Unjust Enrichment claim against Saxon

As this court finds that the Servicing Agreement, by its terms, required Saxon to service the mortgage loans in accordance with accepted servicing practices, MBIA's unjust enrichment claim is precluded by the Servicing agreement. "Where the parties executed a valid and enforceable written contract governing a particular subject matter, recovery on a theory of unjust enrichment for events arising out of that subject matter is ordinarily precluded"(*see, Idt Corp. v Morgan Stanley Dean Witter & Co,.* 12 NY3d 132, 142 [2009]); Unjust enrichment is an obligation imposed by equity to prevent injustice in the absence of an actual agreement between the parties (*Cox v NAP Const. Co,.* 10 NY3d 592, 607 [2008]; *Clark-Fitzpatrick, Inc. v Long Island R. Co.,* 70 NY 2d 382, 388 [1987]). Moreover, to prevail on an unjust enrichment claim under New York Law a party must show that the other party was enriched at that party's expense (*see Cruz v McAneney,* 31 AD3d 54, 59 (2d Dept 2006). Here MBIA has failed to allege that it paid fees to Saxon which were received unjustly (*see Idt Corp. v Morgan Stanley Dean Witter & Co.,* 12 NY3d 132, 142 [2009]). Accordingly, Saxon's motion to dismiss the Fourth Cause of Action is granted.

### 5. Punitive, Consequential and Future Damages

Defendant contends that MBIA's request for punitive damages should be stricken because:

1) It is based on an improper fraud claim;
2) The factual allegations do not allege that Defendants acted with "evil motive" or "wanton" disregard for MBIA's right;
3) It is not alleged that Defendant's conduct was part of a pattern directed at the public generally.

This court has denied the dismissal of the fraudulent inducement claim. Therefore, it is for the trier of the facts to determine whether and to what extent Plaintiff's proof at trial establishes sufficient motive of willful or wanton disregard supporting a claim for punitive damages. The request to strike the claim for punitive damages at this stage is denied (*see Waltree, Ltd. v ING Furman Selz,, LLC,* 97 F.Supp.2d 464, 470- 471 (S.D.N.Y. 2000), c*iting Swersky v Dreyer & Draub,* 219 AD2d 321, 328 [1st Dept 1996]).

12

Defendant also seeks to strike Plaintiff's claim to consequential damages arguing that the Insurance Agreement limits MBIA's remedies for any breach of a representation or warranty in the transaction documents to the cure, replacement or repurchase of the non-conforming mortgage loans. At this stage of the proceeding, it can not be said that such is MBIA's sole and exclusive remedy. Consequential damages may be appropriate in a breach of contract claim if they were reasonably foreseeable at or prior to the time of the contract (*see Bi- Economy Market, Inc. v Harleyville Ins. Co. of New York,* 10 NY3d 187, 192 [2008]; *Ashland Management, Inc. v Janien,* 82 NY2d 395, 402 [1993]). Here, Defendant, a highly sophisticated financial entity familiar with transactions of this type, it is alleged, could clearly foresee the extensive injury and losses – including provable lost profits and the cost to re-underwrite the mortgage loans – that Plaintiff would suffer if the loans were substantially non-compliant with the mortgage loan representations. Moreover, Defendants' contention that the conduct alleged in the Complaint does not set forth a pattern of harm directed at the public generally is fallacious. Consequential damages could be considered a probable result of a breach of the nature alleged in the Complaint and could well have been contemplated by Defendants at the time of or prior to the contracts (*see Panasia Estates, Inc. v Hudson Ins. Co.,* 10 NY3d 200, 203 [2008], c*iting Kenfort Co. v County of Erie*, 73 NY2d 312, 319 [1989]).

Defendant claims that MBIA's request for future damages on its fraud claim violates New York's "out of pocket" rule (*see Continental Cas. Co. v PriceWaterhouseCoopers, LLP,* 15 NY3d, 264, 271 [2010]["In a fraud action, a plaintiff may recover only the actual pecuniary loss sustained as a direct result of the wrong."]) Defendant argues that MBIA can not establish an actual pecuniary loss with respect to claims that have not yet accrued. Defendant's reliance on *Continental* is mistaken. *Continental* concerned a post discovery motion to dismiss upon the basis that Plaintiffs had failed to produce any evidence to support their damages claim. Plaintiff's claim for future damages can not be dismissed at this stage of the proceeding. Upon the trial of the action, Plaintiff will have the burden of establishing its damages by a preponderance of the evidence. The damages must be reasonably certain and must be shown to flow directly from and as a natural consequence of Defendant's wrongful acts. They need not be determined with mathematical precision. By bringing its claims before all potential damages have occurred, MBIA runs the risk that it will not be able to prove damages with sufficient

13

certainty. However, that does not render this claim dismissible at this stage (*see generally In Re Methyl Tertiary Butyl Ether Products Liability Litigation*, 643 F.Supp.2d 446, 456-58 [S.D.N.Y. 2009]). Defendants motion to strike Plaintiff's claim for future damages is denied.

Accordingly, the motion to dismiss is granted as to the fourth cause of action and otherwise denied.

Counsel shall appear before this Court, courtroom 103, on June 23, 2011 at 9:30 a.m. for a Preliminary Conference. This constitutes the decision and order of this Court.

Dated: White Plains, New York
       May 26, 2011

_____
HON. GERALD E. LOEHR
Acting J.S.C.


BOIES, SCHILLER & FLEXNER LLP
Attorneys for Plaintiff
333 Main Street
Armonk, NY 10504


DAVIS POLK & WARDWELL LLP
Attorneys for Defendants
450 Lexington Avenue
New York, NY 10017

14